**Clifford B. DOTY and Helen B. Doty, Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

**Civ. A. No. 17781.**

United States District Court
E. D. Michigan, S. D.

June 6, 1962.

———◆———

Edward G. DeGree (Fildew, DeGree, Fleming & Gilbride), Detroit, Mich., for plaintiffs.

Louis F. Oberdorfer, Asst. Atty. Gen., Edward S. Smith, Jerome Fink, Herman Wilson, Attys., Dept. of Justice, Washington, D. C., Lawrence Gubow, U. S. Atty., Robert F. Ritzenhein, Asst. U. S. Atty., Detroit, Mich., for defendant.

THORNTON, District Judge.

The Court has before it cross-motions for summary judgment filed by the parties to an income tax refund case. The motion of plaintiffs was filed and heard prior to the filing of the motion by the Government. The Government's motion was accompanied by the filing of a brief. We will consider both motions in this memorandum. Each party to the controversy takes the position that there exists no genuine issue as to any material fact, and that summary judgment should be entered in its favor.

For purposes of background data we should state that this case was placed on the suspended docket some time ago because of the pendency before the Court of Appeals for this Circuit of a case which the parties agreed was factually identical in all pertinent respects to this case—Drysdale v. Commissioner, 277 F. 2d 413 (6 Cir., 1960).

The decision in Drysdale was that there were no income tax deficiencies. After the decision was handed down the plaintiffs here moved for summary judgment in their favor. The Drysdale case differs from the instant case in two particulars—one important and the other unimportant. Unimportant is the fact that the case was initially tried in the Tax Court. 32 T.C. 378. Important is the different theory upon which the Government here contends that income tax deficiencies exist. The theory here advanced by the Government was not advanced in the Drysdale case at either Tax Court or Appeal Court level, nor is the opinion of the Court of Appeals authority for rejecting such theory, despite the fact that plaintiffs contend that certain language at the conclusion of the opinion implicitly discredits the theory here advanced by the Government. We state at the outset that we conceive the Drysdale case to be authority for the proposition that the position of the Government as taken by the Tax Court and upon which the Tax Court based its determination is

untenable. The reference which plaintiffs claim was made by the Court of Appeals to the new theory (as we shall call it) of the Government tends to support rather than to discredit the theory. We therefore proceed to a consideration of the new theory.

Since the facts in this case are identical in all pertinent respects to those in Drysdale, we set them forth here by quoting the statement of them as made by Judge Simons in Drysdale:

"The petitioners were cash basis taxpayers and filed joint income tax returns for the years in question. Drysdale, a practical engineer, had been in the employ of Briggs Manufacturing Company since 1926, in charge of production, and subsequently became a director and vice president. Though for a long time in the employ of Briggs, he, on October 1, 1952, for the first time, entered into a formal written employment contract with Briggs. Under it, Briggs was to pay him $1500.00 a month for ten years following termination of his full time activities, or upon reaching the age of sixty five (65). During that period Drysdale obligated himself to serve Briggs in an advisory and consulting capacity and to refrain from accepting employment with, or acquiring an interest in, any activity which was inconsistent with or adverse to the activities of Briggs. Upon the breach of any condition, Drysdale was to forfeit all rights to further compensation under the contract. In the fall of 1953, Briggs negotiated a sale of its automotive and aircraft division to the Chrysler Corporation and a sale was consummated to be effective December 29, 1953.

In this situation, Briggs desired to amend petitioner's employment contract and on December 28, 1953 the original contract was amended. Pertinent clauses are printed in the margin. Under its terms, the Briggs' liability was reduced from $180,000 over a ten year period to $90,000 over a five year period. Briggs was to make payment of $1500.00 a month to a trustee who would hold the money and pay Drysdale $1500.00 a month upon his reaching age sixty five, or upon the termination of full time employment, or to his wife or estate, if he died before reaching sixty five. In addition, petitioner was permitted to work for Chrysler. Except for these amendments, the 1953 [1] contract was to continue in full force and effect. Drysdale became a full time Chrysler employee immediately following the sale to Chrysler and retired in 1957. Briggs turned over to a trustee $16,500 in the tax year 1954 and $18,000 in the tax year of 1955. While Drysdale received nothing from the trustee in those years, the Commissioner contended, and the Tax Court agreed, that these amounts were income to Drysdale during the tax years under the doctrine of construction receipt."

The decision in Drysdale turns on the grounds advanced there by the Government that the amounts paid in 1954 and in 1955 were constructively received by Drysdale, and alternatively on the economic benefit or cash equivalent theory. The Court of Appeals rejected both theories and reversed the Tax Court.

In the instant case the Government has advanced a theory based on § 402 (b) [2] of the Internal Revenue Code of

1. 1952?

2. "§ 402. Taxability of beneficiary of employees' trust
   (b) Taxability of beneficiary of nonexempt trust.—Contributions to an employees' trust made by an employer during a taxable year of the employer which ends within or with a taxable year of the trust for which the trust is not exempt from tax under section 501(a) shall be included in the gross income of an employee for the taxable year in which the contribution is made to the trust in the case of an employee whose beneficial interest in such contribution is nonforfeitable at the time the contribution is made. The amount actually distributed

1954 (26 U.S.C.A. § 402, 1958 ed.). For purposes of this case, the operative words are "non-forfeitable at the time the contribution is made." A reading of the terms of the 1953 amendment (a copy of which we attach as an appendix hereto, together with a copy of the original employment contract) leads to the conclusion that once the Trustee receives contributions from the employer they are in no way forfeitable. They irrevocably inure to the benefit of plaintiff Doty or, in the event of his death, to his wife, or, in the event of her death, to his daughter, or, in the event of the daughter's death, to her estate. See the 1953 amendment, paragraph 15. Paragraph 10 of the original contract cannot possibly have application to the 1953 amendment as plaintiffs here contend. First, by its very language, the breach of a condition works a forfeiture of "all rights to further compensation of any nature to which he may be entitled hereunder." The original contract does not provide for payment of moneys into a trust fund to be managed by a Trustee. Under its terms all payments are to be direct from the employer Briggs to the employee. There could not be such a thing as a "contribution". Each and every payment was compensation payable to the employee under the terms of the contract. If the employee (Doty) failed at any time to live up to liabilities imposed upon him by the contract he forfeited all right to further compensation, whether it be compensation due as current salary or the deferred payment due and owing subsequent to his retirement from full-time employment. There was no fund or trustee in existence which could be affected by such forfeiture. Further compensation from the employer was employee's only security. The 1953 amendment, however, is a very different proposition. Plaintiff and employer Briggs made substantial changes in the contract by this amendment. For one thing employer Briggs reduced its liability for the ten-year subsequent-to-employment period to a five-year period with a corresponding decrease in money liability. Plaintiff, under the 1953 amendment, was "free to accept other full time employment" and plaintiff was given an even greater security as to the subsequent-to-employment period or subsequent-to-age 65 period. The employer Briggs was to pay to a Trustee, to be held as a fund, $75,000.00 at the rate of not less than $1250.00 each month. There is no provision for forfeiture of this fund. On the contrary, under the terms of the 1953 amendment the Trustee agrees "to invest and reinvest" the sums contributed by Briggs in United States government bonds. The 1953 amendment makes no reference to paragraph 10 of the original contract. Even if we try to stretch paragraph 10 so as to apply it to the 1953 amendment, its elasticity would be spent by the time we tried to force it to meet the moneys paid into the fund. The most that it could be stretched to apply to in the 1953 amendment is forfeiture of moneys *to be paid* by Briggs into the fund. As to these, of course, the Government makes no claim that they are subject to 402(b).

We are at a loss to understand how the 1953 amendment can possibly lend itself to the interpretation contended for by plaintiff that the amounts which Doty is entitled to receive from the fund (or Trustee) are forfeitable. The language used, as well as that omitted, indicates that the contribution is non-forfeitable at the time that it is made. Therefore 402(b) applies and we must decide adversely to plaintiffs. This conclusion is not in any respect in conflict with the rationale of the Drysdale case in spite of the different result here reached.

An appropriate judgment may be presented.

### APPENDIX

Original Contract . . . . . . . . . .Exhibit 1

The 1953 Amendment . . . . . . .Exhibit 2

---

or made available to any distributee by any such trust shall be taxable to him, in the year in which so distributed or made available, under section 72 (relating to annuities) except that section 72(e) (3) shall not apply."

## Exhibit 1

This Agreement made and entered into as of this 1st day of October, 1952, by and between Briggs Manufacturing Company, a Michigan corporation, of Detroit, Michigan, party of the first part, and Clifford B. Doty of Detroit, Michigan, party of the second part.

WITNESSETH:

Whereas, second party has been and is in the employ of first party, and the parties hereto desire such employment to continue on mutually acceptable terms,

Now, Therefore, in consideration of the respective covenants and agreements hereinafter set forth, the parties hereto agree as follows:

1. First party hereby employs second party and second party hereby accepts employment as hereinafter described in Paragraphs 2 and 7 hereof, all on the terms and conditions hereinafter set forth.

2. Second party, subject to the provisions of Paragraphs 4 and 7 hereof, shall serve first party in such key executive, administrative, advisory or directorial capacities as the Board of Directors of first party shall from time to time determine and shall at all times devote his entire business time and attention and exert his best efforts to maintain and promote the business of first party. While so employed second party shall be considered for the purposes of this agreement as engaged in "full time employment".

3. During the period of such full time employment second party shall be paid such compensation as the Board of Directors of first party shall from time to time fix, but not less than at the rate of $4,235.00 per month and second party agrees to accept such payment as his minimum basic salary. Such compensation shall be in addition to any other compensation which may be authorized at any time by the Board of Directors of first party and to any participation of second party in any pension plans or similar arrangements of first party.

4. Either party shall have the option to terminate such full time employment at any time after one (1) full year of full time employment hereunder by written notice given at least six (6) months prior to the effective date of termination. Such full time employment shall, unless sooner terminated as in this agreement provided, in any event terminate upon second party attaining the age of sixty-eight (68), unless first party shall agree otherwise, provided, however, that second party upon attaining the age of sixty-five (65) shall then and at any time thereafter have the option of terminating such full time employment. After any termination of full time employment as above provided, employment of second party shall continue hereunder as set forth in Paragraphs 5, 6 and 7 hereof.

5. In the event such full time employment of second party should terminate prior to his attaining the age of sixty-five (65) years for any reason other than the death of the second party, then second party shall while living but subject to the terms and provisions of Paragraphs 7, 10 and 11 hereof, thereafter be paid monthly an amount equal to $173.91 times the number of years, or fraction thereof, of full time employment of second party subsequent to the date hereof, such payments to start thirty (30) days after termination of such full time employment and to continue for ten (10) years thereafter, provided, however, that in no event shall such monthly payments be less than $1,250.00.

6. In the event such full time employment shall have continued until second party shall have attained the age of sixty-five (65), upon termination of such full time employment then or thereafter for any reason other than death second party shall while living but subject to the terms and provisions of Paragraphs 7, 10 and 11 hereof, be paid the sum of $1,666.67 per month, such payments to start thirty (30) days after such termination of full time employment and to continue for ten (10) years thereafter.

7. During such period as second party shall be entitled to any payments under the terms and provisions of Paragraphs 5 and 6 hereof, employment of second party shall be in an advisory and consulting capacity and second party shall, while living and to the extent physically and mentally capable, consult with first party and advise first party at such reasonable times as first party may request with respect to the business activities and problems of first party and shall not during such period accept any employment with or act as consultant or advisor for or to any person, party or organization within the United States or Canada in connection with any matter in respect of which the interest of such other person, party or organization is or might reasonably be expected to be adverse to or inconsistent with that of first party or acquire any interest in any such person, party or organization.

8. In the event of the death of second party at any time he shall be receiving payments under either Paragraph 5 or 6 hereof, then first party shall pay to the person or persons designated in Paragraph 12 hereof the sum of $1,-250.00 per month for the balance of the ten (10) years during which otherwise the payments under said Paragraphs would have continued.

9. In the event such full time employment of second party should terminate by reason of the death of second party, then first party shall pay to the person or persons designated in Paragraph 12 hereof the sum of $1,250.00 per month for ten (10) years, such payments to be made in monthly installments commencing thirty (30) days after such death.

10. In the event second party breaches any of the conditions or agreements on his part to be performed, second party shall forfeit all rights to further compensation of any nature to which he may be entitled hereunder.

11. Neither second party nor any of the persons, except the executor, administrator or personal representative of second party, designated under Paragraph 12 hereof shall be entitled to alienate, commute, encumber, sell, transfer or otherwise dispose of his or their rights to receive the compensation payments provided for herein and such rights are expressly declared non-assignable and non-transferrable. Any attempted assignment or transfer shall immediately terminate any further liability on the part of first party hereunder.

12. All contingent payments which fall due hereunder after the death of second party shall be paid to his executor, administrator or personal representative, or such other person or persons as shall, under the Last Will and Testament of the second party or otherwise, be entitled thereto.

13. This agreement shall be binding upon and enure to the benefit of the parties hereto, any successors to the business of first party and the heirs and personal representatives of second party, but neither this agreement nor any rights hereunder shall be assignable by second party.

IN WITNESS WHEREOF the parties hereto, the party of the first part by its duly authorized officers, have hereunto set their hands and seals as of the day and year first above written.

BRIGGS MANUFACTURING COMPANY

By _____ (Signed) _____
Exec. Vice President

By _____ (Signed) _____
Assistant Secretary

(Signed) _____
Clifford B. Doty

Exhibit 2

THIS AGREEMENT made this 28th day of December, 1953 between BRIGGS MANUFACTURING COMPANY, a Michigan corporation, First Party; CLIFFORD B. DOTY, Second Party and DETROIT TRUST COMPANY, a Michigan corporation, as Trustee, Third Party,

WITNESSETH:

WHEREAS, first party contemplates disposing of a certain portion of its business assets including its automobile body manufacturing business with which second party has for a number of years been associated and with respect to which the parties had executed an employment contract dated as of October 1, 1952, a copy of which is attached hereto;

WHEREAS, first party desires to modify said employment contract in event the disposal of said assets is consummated, in accordance with the provisions hereinafter set forth;

WHEREAS, second party is willing to modify said employment contract upon the following terms providing that certain of the benefits which he was to receive pursuant to said employment contract are preserved as far as practical under the circumstances.

NOW, THEREFORE, in consideration of the performance of the mutual covenants herein contained, it is agreed that said employment contract dated as of October 1, 1952, be and the same is hereby amended and modified by adding thereto, after paragraph 13, the following:

"14. In event first party disposes of its automobile body manufacturing business during the term of this agreement,

"(a) second party's full time employment with first party shall thereupon terminate and second party shall be free to accept other full time employment, including full time employment with the purchaser of such business.

"(b) first party agrees in lieu of all further payments provided for in said contract dated as of October 1, 1952 to pay thereafter to the Trustee for the use and benefit of the second party the sum of $75,000.00 payable in monthly installments of not less than $1,250.00 each month, payable on the first day of each month, commencing one month after the consummation of said first party's disposal of its automobile body manufacturing business to the purchaser and continuing until the full sum of $75,000.00, without interest, has been paid.

"(c) second party agrees that the payments to be made by first party to the Trustee under the preceding paragraph in this modification of said employment contract shall be in complete compromise, settlement, accordance and satisfaction of first party's obligations under said agreement as of October 1, 1952 and of all other obligations of first party under said employment contract dated as of October 1, 1952; and that while Trustee shall be receiving the payments provided for herein, second party shall perform the advisory and consulting services for first party provided for in paragraph 7 of said agreement.

"15. Trustee agrees to accept said payments in behalf of the second party and to invest and reinvest said sums in United States government bonds and to hold and pay said sum under the following terms and conditions:

"(a) As and when second party attains the age of sixty-five (65) years or when he retires from regular employment requiring full time effort, whichever event first occurs, Trustee shall pay to him from the funds received by it, the sum of $833.33 per month until said fund is exhausted;

"(b) In the event second party shall die before attaining the age of sixty-five (65) years or before receiving the full amount of the trust fund, then the Trustee shall pay the same to second party's wife, Helen B. Doty, in like installments as provided in paragraph (a) above, until the fund is exhausted; if Helen B. Doty shall die before said fund is exhausted, the remaining balance thereof shall be paid to second party's daughter, Patricia Doty Barnes, in similar installments; or in the event of the death of Patricia Doty Barnes, then in a lump sum to her estate;

"(c) For its services, Trustee shall be paid a reasonable fee from the funds held in trust in accordance with its current schedule of fees charged for services in similar matters.

"16. It is mutually agreed that said contract of October 1, 1952 as herein

amended shall continue in full force and effect."

IN WITNESS WHEREOF, first and second party have hereunto set their hands and seals and the Trustee has caused these presents to be executed and its corporate seal to be hereunto affixed by its proper officers thereunto duly authorized, the day and year first above written.

BRIGGS MANUFACTURING COMPANY

By (Signed) 
  Chairman of the Board

By (Signed) 
  Secretary

  (Signed) 
  Clifford B. Doty

DETROIT TRUST COMPANY, as Trustee

ATTEST:

By (Signed) 
(Signed)  Its Vice President
Its Assistant Secretary

See also 198 F.Supp. 471.